1

2

3                    **UNITED STATES DISTRICT COURT**

4                         **DISTRICT OF NEVADA**

5                                 * * *

6    REYES CABRERA-CORTES,                    Case No. 2:25-cv-01976-RFB-MDC

7                    Petitioner,                        **ORDER**

8         v.

9
     JASON KNIGHT, *et al*.,
10
                    Respondents.
11

12          Before the Court is Petitioner Reyes Cabrera-Cortes's Petition for Writ of Habeas Corpus

13   ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada

14   Southern Detention Center in the custody of the Federal Respondents. For the following reasons,

15   the Court grants the Petition.

16

17   **I.    INTRODUCTION**

18          This case is one of a growing number before this court challenging the federal

19   government's new policy of mandatory detention of all noncitizens charged with entering the

20   United States without inspection.[1] The policy is based on a new interpretation of the Immigration

21

22          [1] This Court has already granted petitioners relief—both preliminary and habeas—in
     eighteen similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025
23   WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA,
     2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY,
24   2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY,
     2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY,
25   2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025
     WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-
26   MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL
     2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025
27   WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW
     (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL
28   3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK
     (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL

and Nationality Act (INA) by the executive branch, specifically 8 U.S.C. § 1225(b)(2)(A), as requiring the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention is mandatory no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate interest in their detention.

This sweeping new policy, which the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ), adopted on a nationwide basis on July 8, 2025,[2] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See, e.g., Escobar Salgado v. Mattos, 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *22 (D Nev. Nov. 17, 2025) (finding that "the text and canons of statutory interpretation, legislative history, and long history of consistent agency practice, demonstrate . . . that the government's new interpretation and policy under [§ 1225(b)(2)(A)], is unlawful"); see also, e.g., Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025)

---

3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejua v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

1   ("Every district court to address this question has concluded that the government's position belies

2   the statutory text of the INA, canons of statutory interpretation, legislative history, and

3   longstanding agency practice.") (collecting cases).

4        Petitioner challenges Federal Respondents' application of this policy and the regulatory

5   automatic stay mechanism to prolong his detention for months, despite an immigration judge's

6   finding that because Petitioner was subject to § 1226(a) and presented no danger to the community

7   nor a flight risk, release upon bond in the amount of $1,500 (with alternatives to detention at DHS

8   discretion) was appropriate.[4] Respondents contend that the immigration judge erred in ordering

9   Petitioner's release pursuant to section 8 U.S.C. § 1226(a) and assert that Petitioner is lawfully

10  detained pursuant to 8 C.F.R. § 1003.19(i)'s automatic stay and subject to mandatory detention for

11  the duration of removal proceedings under 8 U.S.C. § 1225(b)(2).

12       For the reasons set forth below, the Court finds that Petitioner's detention is unlawful under

13  the INA and violates his due process rights. The Court thus orders his immediate release on bond

14  as ordered by the immigration judge.

15

16  **II.      BACKGROUND**

17       **A. Petitioner Reyes Cabrera-Cortes**

18       The Court makes the following findings of fact relevant to Petitioner. Petitioner is a citizen

19  of Mexico, who entered the United States without inspection over 20 years ago and has resided in

20  the United States since. Petitioner is married, and he and his wife have four children between the

21  ages of 13 and 23, at least two of whom are U.S. citizens. He has no criminal record and is the

22  primary financial provider for his family. Petitioner Cabrera-Cortes has been in DHS custody since

23  August 1, 2025, and is currently detained at the Nevada Southern Detention Center (NSDC) in

24  Pahrump, Nevada.

25       On August 1, 2025, Petitioner was stopped by police on his drive to work in Orem, Utah,

26

27  _____

    [4] The IJ specifically stated that he had jurisdiction over the matter under § 1226(a) because
28  Petitioner "does not appear to be a recent entrant to the United States . . . nor was he apprehended
    near the U.S./Mexico border. Accordingly, this Court has jurisdiction in this matter under section
    236(a) of the [INA]." ECF No. 2 at 26.

and taken into immigration custody.[5] He was then transferred to NSDC where he remains detained.[6] ICE did not set bond, indicating that he was being held in mandatory detention without bond. On August 1, 2025, ICE placed Petitioner into removal proceedings through the issuance of a Notice to Appear, charging him as being subject to removal under section 212(a)(6)(A)(i) of the INA as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." ECF No. 2 at 35. Petitioner was also charged with being subject to removal under 212(a)(7)(A)(i)(I) of the INA, as a noncitizen who did not possess a valid, unexpired entry document and travel document or ID at the time of application for admission. Id.

Petitioner requested a bond hearing before the immigration court, and on August 14, 2025, Immigration Judge Glen Baker ordered Petitioner's release on bond in the amount of $1,500—the minimum statutory amount. The IJ found Petitioner presented neither a flight risk nor danger to the community and further concluded that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), but rather, subject to the provisions of the default detention scheme in § 1226(a). ECF No. 2 at 26. DHS reserved appeal and filed form EOIR-43, invoking the automatic stay pending appeal under 8 C.F.R. § 1003.19(i)(2). A week later, on August 21, 2025, DHS filed an appeal of the IJ's order to the BIA. ECF No. 2 at 32. DHS's appeal of the bond determination with the BIA remained pending as of this Order.

Petitioner and his family have struggled during his prolonged detention. Petitioner's youngest two children, both U.S. citizens, depend on their father for financial, emotional, and medical support due to their asthma. Petitioner's wife has struggled to maintain a stable household without Petitioner and the financial support he previously provided.

### B. Legal Background

Mr. Cabrera-Cortes challenges his continued detention under § 1225(b)(2) as unlawful and asserts that § 1226(a) applies to him and noncitizens like him. The Court incorporates by reference its discussion and findings regarding the legal background of detention authority under the INA,

---

[5] This was not pursuant to any driving offense, traffic violation, or other criminal action.

[6] The date of Petitioner's transfer to NSDC from Utah is unclear.

1    the automatic stay provision under 8 CFR § 1003.19(i)(2), and the government's new mandatory

2    detention policy, as provided in its recent ruling in <u>Escobar Salgado</u>. 2025 WL 3205356, at *2-6.

3

4    **III.    PROCEDURAL HISTORY**

5             On October 15, 2025, Petitioner filed his 28 U.S.C. § 2241 Petition for Writ of Habeas

6    Corpus against Respondents Jason Knight, in his official capacity as the Acting Director of the

7    Las Vegas Field Office of ICE's Enforcement and Removal Operations Division (ERO); Noem,

8    in her official capacity as Secretary of DHS; DHS, as the federal agency responsible for

9    implementing and enforcing the INA; Pamela Bondi, in her official capacity as Attorney General

10   of the United States; EOIR, as the federal agency responsible for implementing and enforcing the

11   INA in removal proceedings, including bond hearings and appeals thereof; and John Mattos, in his

12   official capacity as warden of NSDC. ECF No. 2.

13            This case was initially assigned to the Honorable Judge Miranda D. Du, but on October 24,

14   2025, was transferred to the undersigned judge as related to two pending putative class actions,

15   Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 14. On October

16   28, 2025, counsel for Respondents filed a notice of appearance. ECF No. 17. Respondents' counsel

17   sought an extension of time to respond to the Petition, and on October 31, 2025, Respondents filed

18   their return to the Petition, arguing for its denial. ECF Nos. 18, 19. Petitioner filed a traverse on

19   November 18, 2025. ECF No. 20.

20            The Court's Order follows.

21

22   **IV.    LEGAL STANDARD**

23            The Constitution guarantees that the writ of habeas corpus is "available to every individual

24   detained within the United States." <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 525 (2004) (citing U.S.

25   Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is

26   to provide an effective and speedy instrument by which judicial inquiry may be had into the legality

27   of the detention of a person." <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968). "The essence of

28   habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the

1    traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411

2    U.S. 475, 484 (1973).

3         A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in

4    custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the

5    writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and

6    it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301

7    (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-

8    related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S.

9    510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of

10   the judge or justice who entertains it and receives prompt action from him within the four corners

11   of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citing 28 U.S.C. § 2243).

12

13   **V.    DISCUSSION**

14        **A.  Jurisdiction**

15        As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to

16   the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA,

17   8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez

18   Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In

19   evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule

20   to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation

21   and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796,

22   801 (9th Cir. 2018) (per curiam) (internal quotations and citations omitted).

23        In their return to the Petition, Respondents assert that Petitioner's habeas challenge to the

24   lawfulness of his detention is jurisdictionally barred by 8 U.S.C. §§ 1252(g) and 1252(b)(9). As

25   this Court has previously ruled, and which is incorporated by reference herein, Respondents'

26   arguments under those jurisdiction stripping provisions of the INA are foreclosed by Ninth Circuit

27   and Supreme Court precedent. See Escobar Salgado, 2025 WL 3205356, at *8-10.

28        **B.  The Automatic Stay**

1    Before turning to Petitioner's challenges to the lawfulness of his detention under the INA,

2    the Court first addresses Petitioner Cabrera-Cortes's detention pursuant to the automatic stay under

3    8 C.F.R. § 1003.19(i)(2). This Court has already found the automatic stay is unconstitutional

4    because it violates the procedural and substantive due process rights of noncitizen detainees like

5    Petitioner Cabrera-Cortes. See Escobar Salgado, 2025 WL 3205356, at *10 (D. Nev. Nov. 17,

6    2025); Herrera v. Knight, _ F. Supp. 3d. _, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D.

7    Nev. Sept. 5, 2025). The Court incorporates by reference its reasoning and holding as to the

8    automatic stay from these cases to this case. Id. Thus, the Court finds that Respondents' continued

9    detention of Petitioner pursuant to DHS's authority, under 8 C.F.R. § 1003.19(i)(2), to stay IJ

10    Baker's bond release order is unconstitutional for the same reasons discussed in and incorporated

11    by referenced from Escobar Salgado and Herrera. Id.

12    **C.  Lawfulness of Petitioner's Detention under the INA**

13    Petitioner Cabrera-Cortes challenges the government's new interpretation of the INA, and

14    his detention thereunder, as unlawful. While Respondents assert that § 1225(b)(2) applies to

15    Petitioner and mandates his detention without the ability for release on bond, Petitioner counters

16    that Respondents' interpretation of the statutory scheme of §§ 1225 and 1226 is flawed. This Court

17    agrees with Petitioner and incorporates by reference its holding and findings in Escobar Salgado

18    v. Mattos. 2025 WL 3205356, at *10-22.

19    Petitioner Cabrera-Cortes is a longtime U.S. resident, having lived in this country for over

20    20 years since he entered the United States from Mexico in 2005. He was arrested and detained by

21    ICE in Orem, Utah, far from any port of entry. In addition, Petitioner has no criminal record; the

22    traffic stop that led to his detention was not even based on a driving offense or traffic violation.

23    He has no convictions that would subject him to detention under § 1226(c). Accordingly, the Court

24    finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not §

25    1225(b)(2)(A), and that the government's new interpretation and policy under that provision is

26    unlawful. Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

27    **D.  Due Process**

28    Petitioner also challenges his ongoing detention without ability for release on bond under

the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge to his detention on this basis.

Respondents assert that Petitioner's due process rights are not offended by his continued detention without ability for release on bond. Respondents cite to <u>Jennings v. Rodriguez</u> for the proposition that "Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." ECF No. 19 at 17 (citing <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 286 (2018)). However, in this case, an immigration judge has already found Petitioner does not pose a flight risk nor a danger to the community, defeating that argument. Respondents further cite to <u>Demore</u>, where the Supreme Court upheld detention without bond hearings for a specific class of noncitizens: those whose detention is governed by § 1226(c). <u>Id.</u> (citing <u>Demore</u>, 538 U.S. at 513, 526-57). However, <u>Demore</u>'s holding was based on the government establishing a particular interest in detaining a limited class of noncitizens who had been convicted of certain crimes and were therefore statistically more likely to abscond from removal proceedings. <u>Demore,</u> 538 U.S. at 526-27. In addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." <u>Id.</u> at 513-14. That interest is plainly not implicated in this case, where Petitioner has zero criminal history. Despite these arguments, the government has not shown it has any individualized purpose in continuing to detain Petitioner.

This Court further incorporates by reference the legal authorities and standards set forth in <u>Escobar Salgado v. Mattos</u> regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the ability for release on bond in violation of his procedural and substantive due process rights.

    1.  <u>Procedural Due Process</u>

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without ability for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond, particularly given that this decision to continue detention is despite an IJ's determination that bond is warranted in Petitioner's case. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing where *bond was denied* after presentation of the evidence, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews,

424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of his removal proceedings without the opportunity for release on bond under the government's policy. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated by the fact that IJ Baker held a bond hearing for Petitioner prior to Hurtado, considered all relevant evidence and factors, and found that the government had not established a justification for his detention. Accordingly, it is certain that Petitioner is being arbitrarily and unjustifiably deprived of his liberty through his continued detention.

The additional procedures in this case would simply be a recognition of, and respect for, existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, like the one Petitioner received prior to Hurtado. These procedures substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community to continue his detention for the pendency of removal proceedings. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. As such, the second Mathews factor also weighs heavily in favor of granting Petitioner recognition of his procedural protections under § 1226(a).

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by respecting an

individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in favor of Petitioner, and therefore, his detention without the ability for release on bond violates his procedural due process rights.

### 2.  Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty following the IJ's grant of bond. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary detention is grave cause for concern. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that

1    Petitioner is currently detained in violation of his substantive due process rights. See Escobar

2    Salgado, 2025 WL 3205356, at *25.

3        **E.  Attorneys' Fees**

4        The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's

5    counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act

6    (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

7

8    **VI.    CONCLUSION**

9        Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY**

10   **ORDERED** that Petitioner Reyes Cabrera-Cortes's Petition for Writ of Habeas Corpus is

11   **GRANTED**.

12       Respondents are **ORDERED** to release Petitioner from custody by **7:00 p.m. on**

13   **November 20, 2025.** Petitioner shall be subject to the bond and other conditions imposed by the

14   IJ.

15       **IT IS FURTHER ORDERED** that that the parties shall file a joint status report on or

16   before **November 21, 2025**, confirming that Petitioner has been released in compliance with this

17   Order.

18       **IT IS FURTHER ORDERED** that Petitioner shall have until **December 3, 2025**, to

19   satisfy the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention.

20

21       **DATED:** November 20, 2025.

22

23   _____

24   **RICHARD F. BOULWARE, II**
     **UNITED STATES DISTRICT JUDGE**

25

26

27

28